Bonnie PARSONS, Plaintiff-Appellant,

v.

COUNTY OF DEL NORTE, Board of Supervisors of the County of Del Norte, Sheriff G. Thomas Hopper of the County of Del Norte, County Administrator and Deputy County Administrator of the County of Del Norte, Defendants-Appellees.

No. 83–1641.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 12, 1983.

Decided March 20, 1984.

As Amended April 27, 1984.

Robert Bezemek, Bennett & Bezemek, Oakland, Cal., for plaintiff-appellant.

Karen Ford, Littler, Mendelson, Fastiff & Tichy, San Francisco, Cal., for defendants-appellees.

Before WRIGHT, CHOY, and POOLE, Circuit Judges.

PER CURIAM:

Bonnie Parsons appeals from a district court grant of summary judgment in favor of the County of Del Norte. The district court rejected Parsons' challenges that the County's no-nepotism rule violated the Due Process and Equal Protection Clauses of the United States Constitution, and California Government Code § 12940.[1] The court also ruled against her claim that the County's subsequent failure to appoint her to a different position violated Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e et seq.

In October 1976, Bonnie Parsons and her husband, Phil Parsons, became members of the Reserve Deputy Organization of the Del Norte County Sheriff's Department. The Reserves are unsalaried volunteers who upon the request of the Sheriff performed many of the duties of permanent personnel. In April 1977, Bonnie Parsons was hired in a permanent position as a matron-dispatcher. In March 1978, Phil Parsons was offered a permanent position as a deputy sheriff. Sheriff Hopper told them that the County's no-nepotism rule would not permit spouses to work as permanent employees in the same department.[2] Bonnie Parsons decided to resign because her husband's prospective salary as deputy sheriff was higher than hers as matron-dispatcher.

Later in 1978, Bonnie Parsons applied for a job in a different department as a Bail-

---

1. Parsons' complaint was originally brought under the California Labor Code § 1420. That section was repealed and § 12940 of the California Government Code now covers the subject. Cal.Lab.Code § 1420 (repealed by Stats. 1980, c. 992, p. 3138, § 11) (West 1971 & Supp. 1982); Cal.Gov't Code § 12940 (West 1980 & Supp.1983).

2. The no-nepotism rule is set forth in Section 2.7 of the Employee Handbook, December 1, 1977:

2.7 *Application Restrictions.* An applicant will not be considered for an appointed position who:

(a) Is a member of the immediate family of a member of the Board of Supervisors.

(b) Has a member of his/her immediate family already employed in the same department.

(c) Is a member of the immediate family of any employee of the County unless the County Administrator finds there is no conflict.

(d) Should employees who are members of the same department marry, one shall transfer within 90 days or resign.

The term "immediate family" is defined in Section 1, Definitions, of the Employee Handbook, and provides as follows:

(12) *Immediate Family:* The husband, wife, parent, spouse's parents, brother, sister, child, grandparent or grandchild of the employee.

iff/Vehicle Abatement Officer. She did not get the job and it was filled by an applicant whom the County deemed more qualified.

Bonnie Parsons' complaint, filed in 1980, charged that the no-nepotism rule violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution and § 12940 of the California Government Code. She also alleged that the County's refusal to hire her as a Bailiff/Vehicle Abatement Officer constituted sex discrimination in violation of Title VII. Parsons sought reinstatement to her former position in the Sheriff's department as a matron-dispatcher, compensation for loss of wages, and punitive damages.

### A. Standing

At oral argument there was raised and discussed, for the first time, whether Bonnie Parsons has standing to maintain her constitutional claims in view of her voluntary relinquishment of the position to which she now seeks to be restored.

A majority of the panel concludes that we need not discuss whether Parsons has standing to make the challenges to the County's no-nepotism rule because it was not briefed by either party, but was raised for the first time at oral argument. The majority would assume *arguendo* that Parsons has standing for purposes of this appeal, and hence we proceed to determine the merits of her claims. In a separate concurrence, Judge Poole agrees that Parsons has standing but is of the view that the issue is patent from the record and should be explicitly dealt with.

### B. Constitutionality of the No-nepotism Rule

Parsons contends that the no-nepotism rule violates the Equal Protection and Due Process clauses of the Fourteenth Amendment because it interferes with her fundamental right in the marital status. She argues that the rule must be strictly scruti-

nized and invalidated unless the County has a compelling interest justifying this burden on marriage.

We think Parsons is mistaken. The strict scrutiny analysis is inapplicable because no fundamental right is implicated. Parsons' right to marry or remain married is not threatened, nor unduly burdened. The interest which in fact she seeks to vindicate is a claimed right for her husband and herself to be both given employment in the same County department. Technically, she now seeks reinstatement to her resigned position on the theory that she should have been able to keep it, even though her husband became employed. This is prohibited by the rule.

A regulation does not become subject to strict scrutiny as involving a suspect class merely because in some way it touches upon the incidents of marriage. *Zablocki v. Redhail,* 434 U.S. 374, 386, 98 S.Ct. 673, 681, 54 L.Ed.2d 618 (1978). Only when a government regulation directly and substantially interfers with the fundamental incidents of marriage is such strict scrutiny applicable. *Id.* Where fundamental rights are not substantially burdened the regulation will be upheld unless there is no rational basis for its enactment. *See Califano v. Jobst,* 434 U.S. 47, 53–54, 98 S.Ct. 95, 99, 54 L.Ed.2d 228 (1978); *Ricards v. United States,* 652 F.2d 897, 903 (9th Cir.1981); *Mapes v. United States,* 217 Ct.Cl. 115, 576 F.2d 896, 901 (1978), *cert. denied,* 439 U.S. 1046, 99 S.Ct. 722, 58 L.Ed.2d 705 (1978).

The County asserts justification for the rule in that it avoids conflicts of interest and favoritism in employee hiring, supervision, and allocation of duties. The structure of the rule bears a rational relationship to this end and therefore passes constitutional muster. *Cutts v. Fowler,* 692 F.2d 138, 141 (D.C.Cir.1982); *Keckeisen v. Independent School District,* 509 F.2d 1062, 1065–66 (8th Cir.1975).

Parsons challenges the rule as applied because it does not bar new hires involving other relationships which might import similar personal complications and

problems, such as husbands and wives in the Reserves, unmarried cohabitants, all in-laws, and stepparents. She argues that failure to include these groups leaves open so·many areas of conflict of interest and favoritism that application of the rule to her is arbitrary and capricious, and violates both the Due Process and Equal Protection Clauses.

The Supreme Court held in *Dandridge v. Williams,* 397 U.S. 471, 486–87, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970), that the Equal Protection Clause does not compel the government to the choice that it must either attack every aspect of a problem or refrain from regulating at all. Moreover, there is a reasonable basis for not applying the rule to these groups. The Reserves hold unsalaried volunteer positions that are less attractive than the permanent positions. Hence, they are less prone to be the target of favoritism. In order to attract volunteers to the Reserves the County may need less restrictive eligibility requirements than for the permanent salaried positions. Since the Reserves serve at pleasure, the Sheriff retains control of their activities more readily than those of permanent employees, thereby limiting conflicts and favoritism.

Confining the application of the no-nepotism rule to the immediate family reasonably furthers the County's interest in having a rule that is clear and enforceable. A rule which included unmarried cohabitants would be difficult to apply. Cohabitation does not always involve marital and familial relationships, and the County could reasonably decline to bar all cohabitants from permanent employment.[3] Inquiry into non-familial relationships might easily invite a host of interpersonal conflicts disruptive of morale. Instead, the County has reasonably drawn the line at the immediate family. Accordingly, the constitutional challenge to this rule as applied fails.

■ Parsons argues that the County should be estopped from applying the rule

against her and her husband because the County misled them into believing that both could become permanent employees in the Sheriff's Department. She claims that they were not told of the restriction until they had undergone two years of training and had volunteered hundreds of hours.

These arguments do not make out a constitutional claim. We know of no constitutional requirement that the County inform volunteers of its hiring requirement. At best Parsons appears to be invoking a theory of equitable estoppel. Even so, she has shown neither a justifiable expectation that both spouses would receive permanent employment in the Sheriff's Department nor detrimental reliance. *See Shamrock Development Corp. v. City of Concord,* 656 F.2d 1380, 1386 (9th Cir.1981). The contention that simply allowing her to serve in the Reserves created such an expectation has no merit. Phil Parsons was required to attend the Police Academy in addition to his reserve training experience in order to qualify for the deputy sheriff position. Bonnie Parsons could not reasonably have believed that she and her husband would qualify for permanent employment simply by virtue of their reserve duty, and indeed, he was still undergoing training while she was actually employed. And finally, there is no evidence that the County made such a representation. The estoppel theory fails.

### C. California Government Code § 12940(a)(3)

■ Parsons' Third Amended Complaint cites the California Government Code as a pendent state basis for her sex discrimination claim. However, she now has changed her position and claims that the no-nepotism rule violates the Government Code's prohibition against employment discrimination based on the marital status. This claim was not raised at trial, was not ruled upon in connection with the marital claim, and therefore will not be considered for the

---

**3.** While we find it reasonable for the County to exclude unmarried cohabitants from its policy we do not intimate that it would be unreasonable for other governments to allow their no-

nepotism rules to include unmarried cohabitants. In fact, another circuit has found this application to be reasonable. *Espinoza v. Thoma,* 580 F.2d 346, 349 (8th Cir.1978).

first time on appeal since no substantial interest of justice calls for us to pass upon it.

### D. Title VII Claims

Parsons alleges that the County's refusal to hire her as Bailiff/Vehicle Abatement Officer constituted sex discrimination under Title VII. Instead, the County hired Ken Harrah who had worked for sixteen years on the California Highway Patrol. Parsons had had one year experience as a matron-dispatcher and three as a reserve deputy.

 In Title VII cases, the employer may defend failure to hire an applicant who is in one of the protected classes by showing a legitimate, non-discriminatory reason for not hiring, unless the claimant can show that the proffered reason was a pretext. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254–56, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981). Here the County demonstrated that Harrah was much better qualified for the position than Bonnie Parsons. That was a legitimate reason for not hiring Parsons. She does not contend that the County's showing was pretext. We therefore find no Title VII violation.

The judgment of the district court is AFFIRMED.

POOLE, Circuit Judge, concurring specially.

Generally speaking, an appellate court ought not lightly dismiss claims of apparent substance merely because standing is not clear. But neither should federal courts avoid or gloss over such an issue when it is squarely before them. The majority inexplicably and illogically purports not to be concerned about the standing problem here. But that issue stands out like a sore thumb, and we are bound to decide it, for it is dispositive of our very right to proceed:

> In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a "case or controversy" between [herself] and the defendant within the meaning of Article III. This is the threshold question in every federal

case, determining the power of the court to entertain the suit.

*Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975). The jurisdiction of all federal courts is limited by the "minimum constitutional mandate" that there be a "case or controversy." We must consider whether we have that situation.

Bonnie Parsons voluntarily resigned her position with the Sheriff's Department because, under the no-nepotism rule of the County, her husband could not become employed in the same department. The couple discussed what they should do, as a result of which she decided to give up her job and let him become a deputy sheriff because that job would return to the couple higher pay than hers. This was a conscious, volitional decision, and the question therefore immediately arises: how was *she* injured by her voluntary act? In my view, Bonnie Parsons has sufficiently "alleged such a personal stake in the outcome of the controversy as to warrant [*her*] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [her] behalf," *Warth v. Seldin,* 422 U.S. at 498–499, 95 S.Ct. at 2204–05. But since the injury which she claims is that the rule would not permit a husband to be employed while the wife was also employed, the question is, "who was injured—she or he?"

The majority seems not to recognize the problem here, for it feels that "we need not discuss" Parsons' standing "because it was not briefed by either party" and was first raised at argument. The majority however then "assume[s] arguendo" that standing exists. This is incorrect and can only be ascribed to confusion over our jurisdictional role. I believe we should address that question.

Whether or not the parties raised the issue, its presence and need for answer are obvious. By her resignation Parsons could be said to have caused her own injury insofar as it is identified as constituting a bar, arising from the County's rule, against her current eligibility for employment in her old job. "[She] must assert her own legal

rights and interests, and cannot rest [her] claim to relief on the legal rights or interests of the third parties." *Warth v. Seldin,* 422 U.S. at 499, 95 S.Ct. at 2205 (quoting *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663). Bonnie Parsons therefore had to show that she, not someone else—not merely her husband—had suffered from "some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction." *Linda R.S. v. Richard D.,* 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (Private citizen [mother of illegitimate child] "lacks a judicially cognizable interest in the prosecution or non-prosecution for support of another [the father].).

The majority mistakenly suggests that issues such as these are not primarily our concern, not to be discussed where the parties did not brief or raise the issues before oral argument. Curiously, they "assume arguendo," without analysis, that standing exists. The question will not go away merely because the majority confuses its significance or chooses to ignore its presence.

If in resigning, Bonnie Parsons caused her own injury, she cannot blame either the County or its rule. If the rule operated only to deprive her husband of an opportunity, this does not constitute the individualized injury which would give her the personal stake in its vindication.

Bonnie Parsons' response is that the effect of the rule was wrongfully to force her to choose between keeping her position and thus depriving her husband of a desirable position, or resigning. She argues that this draconian choice harmed her individual interest in their marital relationship, and thus was a legal injury for which she could individually sue; and that her resignation constitutes no bar because it was involuntary. She argues also that since her husband shared in this right, it matters not whether she resigned and sued or her husband sued. *See Singleton v. Wulff,* 428 U.S. 106, 115, 96 S.Ct. 2868, 2874, 49 L.Ed.2d 826 (1976) (Doctors had standing to challenge a statute excluding abortions not medically indicated from Medicaid benefits because doctors had a pecuniary interest in elimination of the rule.). This certainly is a not-altogether illogical conclusion.

The point is not whether these arguments will prevail but whether they have enough substance to require addressing. I believe they should be determined. "[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal * * *." *Warth v. Seldin,* 422 U.S. at 500, 95 S.Ct. at 2205–06. The essential question is whether this person has pleaded an entitlement to judicial relief, not whether that relief will in fact be awarded. Bonnie Parsons claims a substantial interference with an important incident of the marital relationship—the right of married persons to be considered for employment without discrimination on account of their marital status. I agree that she will not prevail in this suit, but I think she has presented a justiciable claim which we should decide.

A further consideration for entertaining the claims—and for saying why we do so— is that were her lawsuit to be dismissed, the controversy over validity of the rule may continue to arise, yet be incapable of adjudication. We have frequently found claims appropriate for decision in situations involving injuries which are capable of repetition but, under rigid application of rules of justiciability, may escape review. *See Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 712, 35 L.Ed.2d 147 (1973). The rule of which she complains may touch many people and has importance warranting our decision.

I would conclude that Bonnie had tendered a claim that injury has been done to the marital interest shared with her husband. However we resolve that allegation, we must analyse it before determining its merits.

The court's opinion, in which I join, resolves these imponderables; but the majority declines to say what process we professed to reach them.