*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0385p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JUNE BEECHAM,

          *Plaintiff-Appellant,*

    *v.*

HENDERSON COUNTY, TENNESSEE and KENNY
CAVNESS,

          *Defendants-Appellees.*

No. 04-5845

---

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 03-01177—J. Daniel Breen, District Judge.

Argued: May 31, 2005

Decided and Filed: September 9, 2005

Before: BOGGS, Chief Judge; GILMAN, Circuit Judge; CLELAND, District Judge.[*]

---

## COUNSEL

**ARGUED:** Justin S. Gilbert, THE GILBERT LAW FIRM, Jackson, Tennessee, for Appellant. Brandon O. Gibson, PENTECOST, GLENN & RUDD, Jackson, Tennessee, for Appellees. **ON BRIEF:** Justin S. Gilbert, Michael L. Russell, THE GILBERT LAW FIRM, Jackson, Tennessee, for Appellant. Brandon O. Gibson, James I. Pentecost, PENTECOST, GLENN & RUDD, Jackson, Tennessee, for Appellees.

---

## OPINION

---

    CLELAND, District Judge. Plaintiff-Appellant June Beecham appeals the district court's July 2, 2004, order granting motions for summary judgment filed by Defendants-Appellees Henderson County, Tennessee, and Kenny Cavness. Plaintiff's complaint was brought under 42 U.S.C. § 1983, alleging retaliation for the exercise of her right to intimate association under the First Amendment. Plaintiff claimed that Defendants wrongfully terminated her at-will employment with the county because of her intimate association with one Steve Milam, which included an engagement

---

[*] The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

to be married.  Defendants responded that Plaintiff's relationship was "adulterous" and, under our decision in *Marcum v. McWhorter*, 308 F.3d 635 (6th Cir. 2002), not entitled to First Amendment protection. The district court agreed with Defendants, granting them summary judgment. We affirm the judgment of the district court, although on different grounds.

## I.  Background

In October 2002, Steve Milam, an attorney practicing in Henderson County, proposed marriage to Plaintiff, who was a Deputy Clerk for the Circuit Court of Henderson County.  Mr. Milam's overture was made while he was still married to (although living apart from) Patricia Leigh Milam.[1]  Mrs. Milam was employed as the Clerk and Master of another Henderson County court, the Chancery Court, the offices of which were on the same floor in the courthouse as those of the Circuit Court Clerk for whom Plaintiff worked.

In view of these relationships, Defendant Kenny Cavness, the Circuit Court Clerk for Henderson County, consulted with Amy Halters, who was then the Henderson County Attorney. Cavness told Halters that he had decided to terminate Plaintiff's employment and that one of the reasons for his decision was the observation that Plaintiff's relationship with Mr. Milam was causing tension in the courthouse in general and in the Circuit Court Clerk's office in particular.  Halter advised Cavness that he could terminate Plaintiff's at-will employment without violating any state or federal law.  On April 30, 2003, Cavness terminated Plaintiff's employment.

## II.  Standard

We review the district court's grant of summary judgment *de novo*.  *Watkins v. Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001).  Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Summary judgment is appropriate if a party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.  Analysis

The district court reasoned that, because an intimate relationship between Milam and Beecham carried on during the pendency of Milam's marriage was adulterous, our decision in *Marcum* prohibited a finding that such a relationship enjoyed constitutional protection. The district court held that Plaintiff "is unable to establish the first element of her retaliation claim" because the "binding precedent of *Marcum* prevents a finding that . . . [P]laintiff engaged in conduct protected by the Constitution."  As explained briefly below, we find the record of the Milam/Beecham romance unclear about the existence of a *sexual* intimate relationship, one of the predicates of adultery; this, in turn, forestalls the implications of *Marcum*.  We affirm the district court, however, because Plaintiff's claim cannot survive rational-basis review.  *Abercrombie & Fitch Stores, Inc. v. American Eagle*, 280 F.3d 619, 629 (6th Cir. 2002) (because the court's *de novo* review involve[d] only the application of legal propositions to the undisputed facts in the record, the court could affirm on any grounds supported by the record even if different from the reasons of the district court); *see*

---

[1]Plaintiff avers that on April 1, 2003, Mrs. Milam filed for "divorce against Mr. Milam in Madison County Chancery Court," while Defendants contend that Mrs. Milam filed a "complaint for legal separation" in another court. Notwithstanding these somewhat conflicting assertions, there is no evidence in the court record that the Milams' divorce proceedings were final at the time of Plaintiff's termination.  The record indicates that a complaint for legal separation was filed by Mrs. Milam on April 1, 2003.

*also Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000) (en banc) (citing *Andrews v. Ohio*, 104 F.3d 803, 808 (6th Cir. 1997)).

## A.  Intimate Association, Adultery, and *Marcum*

The district court correctly noted that the right to "intimate association" is not limited to familial relationships but includes relationships characterized by "relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship." *Roberts v. United States Jaycees*, 468 U.S. 609, 620 (1984); *see also Anderson v. City of Laverne*, 371 F.3d 879, 881-82 (6th Cir. 2004) (for summary judgment purposes, a dating relationship between a police officer and an administrative assistant for the police department qualified as an intimate association because the two were monogamous, had lived together, and were romantically and sexually involved); *Akers v. McGinnis*, 352 F.3d 1030, 1039-40 (6th Cir. 2003) (personal friendship is protected as an intimate association).  In *Board of Directors of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 545 (1987), the Court emphasized that protection is afforded to those relationships that "presuppose 'deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life'" (citing *Roberts*, 468 U.S. at 619-20).

In judging the character of the association involved in this case, the factors of smallness and exclusivity that are referenced in the case law noted above weigh in favor of Plaintiff's claim, at least when we take the evidence in the light most favorable to Plaintiff and set aside any issues involving Milam's marital status.  According to Plaintiff, she and Milam were "deeply involved in a romantic relationship."  Milam asked Plaintiff to marry him.  The two discussed where they would live, looked for a home together, and discussed the intimate details of their lives, including raising children and the bond between husband and wife.  They also planned how to merge their families, and decided whether to have additional children and whether Plaintiff's daughter would live with them.

A relationship between a married person and another to whom he or she is not married is "adulterous" if there is a sexually intimate component to the relationship.  *See Black's Law Dictionary* (7th Ed. 1999) (adultery is "voluntary sexual intercourse of a married person with a person other than the offender's husband or wife.")  We held in *Marcum* that an adulterous intimate relationship does not fall within the purview of constitutional protection.  *Marcum*, 308 F.3d at 643.  Plaintiff notes that, before the district court's order was entered, the United States Supreme Court, in *Lawrence v. Texas*, 539 U.S. 558 (2003), overruled *Bowers v. Hardwick*, 478 U.S. 186 (1986), for too narrowly construing the scope of an intimate relationship.  Plaintiff emphasized in her briefing "the fullness of the [parties'] relationship," while contending that *Marcum* cannot properly be applied because "an intimate relationship after *Lawrence* is not assessed by whether, in fact, Beecham had sexual relations with a legally separated, but not yet legally divorced partner."  Plaintiff has pointed to the absence of actual evidence proving any sexual acts.  Although we think that a reasonable inference of such intimacies might well be drawn by an ultimate finder of fact, we agree that the record is not one-sided on that issue.  We see no specific admissions or deposition testimony in the record, for example, to support a finding that there was a sexual aspect to the relationship.  We conclude that there remains a genuine issue of material fact whether Plaintiff's relationship with Mr. Milam was, in fact, "adulterous."  While we are doubtful of Plaintiff's argument that our decision in *Marcum* was overruled by *Lawrence,* our application of rational basis review, *ante,* makes further discussion of the point unnecessary.

### B.  Rational-Basis Review

Assuming that Plaintiff's involvement in a "romantic relationship" with Milam was of the species that avoided sexual relations, we will also assume that it constituted a protected form of intimate association.  The question then becomes what level of scrutiny we must apply.

Government action that has a "direct and substantial influence" on intimate association receives heightened review.  *Anderson*, 371 F.3d at 882.  Government action is deemed to have "'direct and substantial' burdens on intimate association 'only where a large portion of those affected by the rule are absolutely or largely prevented from [forming intimate associations], or where those affected by the rule are absolutely or largely prevented from [forming intimate associations] with a large portion of the otherwise eligible population of [people with whom they could form intimate associations].'" *Id. See also Vaughn v. Lawrenceburg Power System,* 269 F.3d 703, 710 (6th Cir. 2001) ("direct and substantial" interference results "only where a large portion of those affected by the rule are absolutely or largely prevented from marrying, or where those affected by the rule are absolutely or largely prevented from marrying a large portion of the otherwise eligible population of spouses").

A government policy, to constitute an unconstitutional interference with a protected intimate association, must present "a direct and substantial interference with the right" of such an association. *Montgomery v. Carr*, 101 F.3d 1117, 1124 (6th Cir. 1996).  In this case, Plaintiff's termination did not bar her from every form of employment in every sector of society.  She was discharged from one position at one courthouse.  All other employment opportunities are available to her. *Vaughn*, 269 F.3d at 712 (holding that the anti-nepotism policy at issue "did not bar [the plaintiffs] from getting married, nor did it prevent them [from] marrying a large portion of population even in Lawrence County.  It only made it economically burdensome to marry a small number of those eligible individuals, their fellow employees. . . .  Once [Plaintiffs] decided to marry *one another*, [their employer's] policy became onerous for them, but *ex ante*, it did not greatly restrict their freedom to marry or whom to marry.  As a consequence, the exogamy rule in itself must be considered a non-oppressive burden on the right to marry, and so subject only to rational basis review by this court."); *Califano v. Jobst*, 434 U.S. 47, 54 (1977) (the policy at issue "is not rendered invalid simply because some persons who might otherwise have married were deterred by the rule or because some who did marry were burdened thereby.")

In *Wright v. Metrohealth Medical Center*, 58 F.3d 1130, 1135 (6th Cir. 1995), the court further clarified this rule, citing *Parks v. City of Warner Robins, Georgia*, 43 F.3d 609, 614 (11th Cir. 1996), which held:

> The [anti-nepotism] policy [in the case did] not create a direct legal obstacle that would prevent absolutely a class of people from marrying.  While the policy may place increased economic burdens on certain city employees who wish to marry one another, the policy does not forbid them from marrying.  Any increased economic burden created by the anti-nepotism policy is no more than an incidental effect of a policy aimed at maintaining the operational efficiency of Warner Robins' governmental departments, not a direct attempt to control the marital decisions of city employees.  Moreover, individual instances of hardship notwithstanding, the anti-nepotism policy at issue here does not make marriage practically impossible for a particular class of persons.

*Id.* (citing *Parks*, 43 F.3d at 614); *see also Parsons v. County of Del Norte*, 728 F.2d 1234, 1237 (9th Cir. 1984) (per curiam) (holding that City's no-nepotism rule did not threaten or unduly burden the plaintiff's right to marry or remain married), 469 U.S. 846 (1984); *see also Jobst*, 434 U.S. at 54.

It is of no consequence that there was no official policy in this case. *In Montgomery,* we held:

> We are not persuaded that the basis for distinguishing between this case and *Adkins* [*v. Board of Educ. of Magoffin Co.*, 982 F.2d 952, 956 (6th Cir. 1993)], should rest even partially on the notion that isolated instances of state action should be treated any differently than broad-ranging state policies. State officials acting without the authority of any general policy should not necessarily be barred from deciding in an isolated case to transfer one of two co-worker spouses because that official believes that the couple's marriage is interfering with legitimate governmental objectives.

*Id.* at 1127.

In *Montgomery*, we also held that "we will not create a rule in this circuit that has no basis in the Supreme Court's associational rights decisions, a rule that ad hoc executive decisions imposing burdens on married co-workers in order to promote a governmental end should be treated differently from policies of general application designed to serve the same end." *Id.*

It also is inconsequential that Plaintiff's intimate association with Milam was not formalized by marriage, as the same rule has been applied to relationships less formal than marriage. *Anderson*, 371 F.3d at 882 (holding that a police force policy prohibiting *dating* between officers of different ranks did not directly and substantially burden the right to intimate association because officers were still free to date anyone other than this small subset of the population); *Akers*, 352 F.3d at 1040-41 (holding that a Michigan Department of Corrections rule prohibiting workers from having non-work-related *contact* with prisoners, parolees, probationers, and their relatives and visitors did not directly and substantially burden the right to intimate association).

In sum, "virtually every court to have confronted a challenge to an anti-nepotism policy on First Amendment, substantive due process, equal protection, or other grounds has applied rational basis scrutiny." *Montgomery,* 101 F.3d at 1126 (citing *Parks*, 43 F.3d at 614-15 (First Amendment, substantive due process, and equal protection); *Austin v. Berryman*, 878 F.2d 786, 787 (4th Cir. 1989) (en banc) (Virginia statute denying unemployment benefits to spouse who voluntarily quit work to follow other spouse to a new locality was not a violation of substantive due process, after applying rational-basis scrutiny); *Campbell v. City of Allen Park*, 829 F.2d 576, 581 (6th Cir. 1987) (applying rational basis scrutiny to an equal protection and substantive due process challenge to a residency requirement impinging on the right to marry); *Parsons*, 728 F.2d at 1237-38 (substantive due process and equal protection); *Cutts v. Fowler*, 692 F.2d 138, 141 (D.C. Cir. 1982) (substantive due process); *Espinoza v. Thoma*, 580 F.2d 346, 349 (8th Cir. 1978) (equal protection); *Keckeisen v. Indep. Sch. Dist*. 612, 509 F.2d 1062, 1065-66 (8th Cir. 1975) (substantive due process); *Sebetic v. Hagerty*, 640 F. Supp. 1274, 1276-78 (E.D. Wis. 1986) (equal protection and substantive due process), *aff'd sub nom. Heyden v. Schoenfeld*, 819 F.2d 1144 (7th Cir. 1987); *Southwestern Cmty. Action Council v. Cmty. Servs. Admin*., 462 F. Supp. 289, 296-98 (S.D. W.Va. 1978) (substantive due process); *Johnson v. United States*, 422 F. Supp. 958, 970-76 (N.D. Ind. 1976) (substantive due process, First Amendment associational rights, and Ninth and Tenth Amendment challenges), *aff'd sub nom. Barter v. United States*, 550 F.2d 1239 (7th Cir. 1977) (per curiam); *Mapes v. United States*, 576 F.2d 896, 900-01 (Ct. Cl. 1978) (substantive due process and equal protection)).

Plaintiff's claim cannot prevail upon the application of rational-basis review to the employment action taken by her employer. The Supreme Court has held that rational-basis review is satisfied "so long as there is a plausible policy reason" for the decision, *Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992), and it is "entirely irrelevant for constitutional purposes" whether the plausible reason in fact motivated the policymaker, *FCC v. Beach Communications, Inc*., 508 U.S. 307, 315 (1993).

Henderson County Courthouse officials, deciding that it was unacceptably disruptive to the workplace for a woman employed in the office of one of the county's courts to be openly and "deeply involved in a romantic relationship" with a man still married to a woman employed in the other county court down the hall, acted upon a "plausible policy reason." *Nordlinger,* 505 U.S. at 11. A rational basis for the decision is therefore evident.

## IV. Conclusion

We AFFIRM the judgment of the district court.