66 F.3d 316
 1995 Copr.L.Dec. P 27,484
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
RICHMOND HOMES MANAGEMENT, INCORPORATED, Plaintiff-Appellee,
v.
RAINTREE, INCORPORATED; Jared L. Lake; Sunset Investments,
Incorporated, Defendants-Appellants.
RICHMOND HOMES MANAGEMENT, INCORPORATED, Plaintiff-Appellant,
v.
RAINTREE, INCORPORATED; Jared L. Lake; Sunset Investments,
Incorporated, Defendants-Appellees.
RICHMOND HOMES MANAGEMENT, INCORPORATED, Plaintiff-Appellee,
v.
RAINTREE, INCORPORATED; Jared L. Lake; Sunset Investments,
Incorporated, Defendants-Appellants.
 Nos. 94-2214, 94-2294, 94-2425.
 United States Court of Appeals, Fourth Circuit.
 Argued: June 7, 1995.
Decided: Sept. 18, 1995.
 
 ARGUED: George Howard Dygert, Dygert & Associates, Charlottesville, VA, for appellants. Willard Todd Benson, Bondurant & Benson, P.C., Richmond, VA, for appellee.
 ON BRIEF: Sheldon H. Parker, Parker & De Stefano, Charlottesville, VA, for appellants. Thomas O. Bondurant, Jr., Bondurant & Benson, P.C., Richmond, VA, for appellee.
 Before ERVIN, Chief Judge, WILKINS, Circuit Judge, and JACKSON, United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 ERVIN, Chief Judge:
 
 
 1
 Raintree, Inc., Sunset Investments, Inc., and Jared L. Lake (collectively "Raintree"), appeal from the district court's judgment following a bench trial awarding Richmond Homes Management, Inc. ("RHMI") $218,708 in damages, based on its finding that Raintree infringed the copyrights on two architectural designs owned by RHMI. Because we conclude that RHMI did not prove that it owned one of the copyrights at issue, we reverse the judgment of the district court in part and remand this case for a recalculation of damages.
 
 I.
 
 2
 The facts of this case are fully set forth in the opinion of the court below. Richmond Homes Management v. Raintree, Inc., 862 F.Supp. 1517, 1520-23 (W.D.Va.1994). We therefore offer a brief summary only. The parties to this case, RHMI and Raintree, are competitors in the Charlottesville, Virginia, housing market. In 1987, Richmond Homes, Inc. ("Richmond Homes"), a corporation separate from RHMI, applied for and received a copyright for the "Heritage" residential design. In 1992, RHMI applied for and received copyrights for the "Louisa" plan, which was derived from the Heritage. Both the Heritage and the Louisa were developed by Robert Martinko and V. Earl Dickinson, Jr., presently officials with RHMI. The internal floor plans of the two designs are essentially the same, except the Louisa contains forty to forty-eight additional square feet of floor space. The exterior of the Louisa is significantly different than that of the Heritage, however, as the Louisa has a distinctive double-gabled roof over the family room and front porch that is not included in the Heritage. Additionally, the Louisa design eliminates one window, adds a second octagonal vent at the peak of the porch roof, and deletes a small cantilever of the second floor.
 
 
 3
 In August 1993, RHMI filed a complaint against Raintree in the United States District Court for the Western District of Virginia. RHMI alleged that Raintree had violated RHMI's 1992 Louisa copyrights by appropriating that architectural design and constructing fourteen residences, which Raintree named the "Rockford." On March 9, 1994, the district court issued a temporary injunction prohibiting Raintree from constructing or contracting to build any homes that infringed RHMI's Louisa copyrights.
 
 
 4
 On the first day of a bench trial, the district court granted RHMI's motion to amend its complaint to allege that Raintree also had infringed the 1987 Heritage copyright, from which the Louisa was derived. Until that time, RHMI had relied solely upon the Louisa copyrights to support its infringement claim. The official registration of the Heritage copyright showed that it was owned by Richmond Homes, a fact also confirmed by the testimony of Robert Martinko.
 
 
 5
 The evidence at trial indicated that the fourteen "Rockfords" sold by Raintree had interiors substantially similar to that in the Louisa and Heritage homes developed by RHMI and Richmond Homes. It also revealed that the exterior of all but one of the Rockfords--that built on Lot 14, Section 8 of Lake Monticello--mirrored the Louisa. Unlike the Louisa design, the Rockford on Lot 14 has a long front porch, no double-gabled roof, and a significantly different arrangement of front windows. Id. at 1527; see Joint Appendix at 150. As proof of copying, former Raintree employee Hilton Rubin testified that he was instructed to put a rendering of the Louisa on Raintree's computer at approximately the same time Raintree was negotiating with two customers interested in that particular design. Moreover, RHMI's expert witness, Robert Kirchman, stated that Raintree's depiction of the Rockford was a "second generation" rendering, likely created by copying the Louisa. Raintree did introduce a hand-drawn sketch by its owner, defendant Jared Lake, as evidence of the Rockford's independent development, but that sketch was found to be a tracing of the last Rockford home built by Raintree.
 
 
 6
 In an opinion issued on September 7, 1994, the district court found that the interior of the Louisa and that of all fourteen Rockfords were substantially similar. Richmond Homes Management, Inc., 862 F.Supp. at 1521. The court determined, however, that the Rockford on Lot 14 had an exterior that was significantly different from that of the Louisa. Id. at 1521-22. The interior of that house, however, resembled that of the Heritage design. Id. at 1521. The district court also found that RHMI had valid copyrights of both the Heritage and the Louisa designs. Id. at 1526. Specifically, the court found that "the defendants did not introduce evidence to rebut the validity of the Heritage copyright." Id. at 1521. Based on that conclusion, the court recognized that:
 
 
 7
 Where the same creator owns both the original and derivative copyrights, the only sound interpretation of the Copy right Act is that the derivative work carries forward all preexisting copyrights in the original work.... Since the Plaintiff owns the copyrights of both the Heritage and the Louisa, and the Heritage copyright is valid, the protection of the Heritage floorplans is carried forward into the Louisa copyright.
 
 
 8
 Id. at 1526. Concluding that all fourteen of Raintree's Rockford homes infringed on RHMI's Louisa copyrights, the court awarded damages based on Raintree's estimated net profit of $15,622 per home, for a total of $218,708. Id. at 1530. One month later, the court entered another order denying a motion by Raintree for sanctions against RHMI on the ground that RHMI had prevailed at trial.
 
 
 9
 Raintree timely appealed the district court's order awarding judgment, as well as the court's denial of its motion for sanctions. RHMI cross-appealed as to the district court's calculation of damages for the last four Rockford homes sold.
 
 II.
 
 10
 We review the district court's factual findings for clear error and its conclusions of law de novo. Waters v. Gaston County, 57 F.3d 422, 425 (4th Cir.1995). Raintree makes two related arguments that concern the ownership of the Heritage copyright. First, Raintree contends that the district court erred by finding that RHMI owned the Heritage, because it was registered in the name of Richmond Homes, and RHMI offered no other evidence of ownership. Second, Raintree argues that the district court thereby incorrectly concluded that under the doctrine of merger, the Louisa copyrights covered that portion of the Heritage design included in the Louisa.
 
 
 11
 RHMI asserts that Raintree did not raise this issue before the district court, and therefore that Raintree is precluded from relying on it now. We repeatedly have held that, absent exceptional circumstances, a claim not raised below will not be considered on appeal. See, e.g., Sierra Club v. Larson, 882 F.2d 128, 133 (4th Cir.1989); Kinty v. United Mine Workers, 544 F.2d 706, 722 (4th Cir.1976), cert. denied, 429 U.S. 1093 (1977). In this case, however, Raintree had no indication that RHMI intended to rely on the Heritage copyright until the first day of trial. Moreover, Raintree raised the lack of ownership of the Heritage copyright in its proposed findings of fact and conclusions of law, which were submitted to the district court in lieu of closing arguments. Therefore, this does not constitute a situation where we must ignore an issue, and a critical one at that, because a party neglected to bring it to the attention of the court below.
 
 
 12
 In order to prevail in a copyright infringement action, the plaintiff must first prove that it owns the copyright it seeks to enforce. Keeler Brass Co. v. Continental Brass Co., 862 F.2d 1063, 1065 (4th Cir.1988). In this case, the 1987 Heritage design was registered in the name of "Richmond Homes, Inc." In contrast, the Louisa design was registered by "Richmond Homes Management, Inc.," or plaintiff RHMI. There is no evidence of record that RHMI and Richmond Homes are either the same or related corporations. Nor is there any indication that an interest in the Heritage copyright was transferred from Richmond Homes to RHMI. See 17 U.S.C. Sec. 204(a) (establishing that the transfer of ownership of a copyright must be in writing). Given this lack of proof, we must reject the district court's finding that RHMI owned the Heritage copyright as clearly erroneous.
 
 
 13
 Having concluded that the district court's finding of common ownership of the copyrights by RHMI is clearly erroneous, it follows that the Heritage and Louisa copyrights cannot be merged as derivative creations of the same owner.
 
 
 14
 The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material. The copyright in such work is independent of and does not affect or enlarge the scope, duration, ownership or substance of, any copyright protection in the preexisting material.
 
 
 15
 17 U.S.C. Sec. 103(b). Because RHMI cannot assert the Heritage copyright, it may claim damages based solely on the aspects of the Louisa "distinguished from the preexisting material employed in the work." 17 U.S.C. Sec. 103(b). Therefore, we must remand this case so that RHMI's damages can be recalculated on that basis. The district court already has found that one of the fourteen Rockfords does not infringe on the Louisa design, as its exterior is not substantially similar. On remand, then, damages are to be determined based only on the thirteen Rockfords that infringe on the Louisa copyrights.
 
 
 16
 Finally, we have considered the parties' other arguments regarding the manner in which the district court calculated damages, including RHMI's argument on cross-appeal that the court erroneously computed damages stemming from the sale of the last four Rockfords. With the exception of the trial court's inclusion of damages resulting from the infringement of the Heritage copyright, see supra, the calculation of damages in this case is sound. In addition, because the claims RHMI presented had substantial merit, the district court did not abuse its discretion in denying Raintree's motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure.
 
 III.
 
 17
 For the reasons discussed above, we reverse the judgment of the district court in part, declining to award RHMI damages stemming from the infringement of the Heritage copyright. With that exception, we accept the district court's findings. Accordingly, we remand this case so that damages may be recalculated consistent with this opinion.
 
 No. 94-2214--REVERSED IN PART AND REMANDED
 No. 94-2294--AFFIRMED
 No. 94-2425--AFFIRMED