**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

NATIONAL SHIPPING COMPANY OF
SAUDI ARABIA,
<u>Plaintiff-Appellant,</u>

v.

MORAN TRADE CORPORATION OF

No. 96-1741

DELAWARE, in personam; MORAN
TOWING OF VIRGINIA, INCORPORATED,
a division of Moran Mid-Atlantic
Corporation,
<u>Defendants-Appellees.</u>

NATIONAL SHIPPING COMPANY OF
SAUDI ARABIA,
<u>Plaintiff-Appellee,</u>

v.

MORAN TRADE CORPORATION OF

No. 96-1824

DELAWARE, in personam; MORAN
TOWING OF VIRGINIA, INCORPORATED,
a division of Moran Mid-Atlantic
Corporation,
<u>Defendants-Appellants.</u>

Appeals from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Rebecca B. Smith, District Judge; J. Calvitt Clarke, Jr.,
Senior District Judge; Tommy E. Miller, Magistrate Judge.
(CA-95-258-2)

Argued: June 3, 1997

Decided: September 9, 1997

Before HALL and MICHAEL, Circuit Judges, and
TILLEY, United States District Judge for the
Middle District of North Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** John R. Crumpler, Jr., KAUFMAN & CANOLES, P.C.,
Norfolk, Virginia, for Appellant. Mark Travis Coberly, VANDE-
VENTER, BLACK, MEREDITH & MARTIN, L.L.P., Norfolk, Vir-
ginia, for Appellees. **ON BRIEF:** Megan A. Burns, KAUFMAN &
CANOLES, P.C., Norfolk, Virginia, for Appellant. Patrick A. Gen-
zler, VANDEVENTER, BLACK, MEREDITH & MARTIN, L.L.P.,
Norfolk, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Plaintiff National Shipping Co. of Saudi Arabia (NSCSA) brought
an action against defendants Moran Trade Corporation of Delaware,
Moran Towing of Virginia, Moran Mid-Atlantic Corporation, and the
M/V HARRIET MORAN (collectively "Moran") in an effort to
recoup its expenses in the cleanup of an oil spill on the Elizabeth
River outside Norfolk, Virginia. The district court determined that
Moran was negligent and that this negligence was the sole cause of
the spill. The court therefore found Moran liable for the costs of the
cleanup under the Oil Pollution Act of 1990 (OPA), 33 U.S.C. § 2701
et seq. However, the court limited Moran's liability under OPA to

2

$500,000 (roughly half the cost of the cleanup). Finally, the court held that NSCSA could not recoup the excess costs through exceptions to the liability cap or through state law claims. NSCSA appeals from this limitation on Moran's liability, and Moran cross-appeals from the court's determination that it was negligent. Finding no error, we affirm.

I.

This case involves an accident between a tugboat and a cargo vessel. The cargo vessel SAUDI DIRIYAH, owned by NSCSA, was docked at Norfolk International Terminals on the Elizabeth River. On the night of December 1, 1993, the vessel was to undock and move upstream to different docks. NSCSA contracted with Moran to provide two tugboats to assist in the move; it also contracted with docking pilot John Morey to oversee the move.

After breasting away from the pier, the SAUDI DIRIYAH made a series of turns to maneuver up the river. To make these turns, the vessel used bow and stern thrusters that were mounted on the side. At some point during the turn, William Lusk, the captain of the tugboat HARRIET MORAN, brought the tug in on the SAUDI DIRIYAH's port quarter to assist with the turn into the channel. However, when the boats made contact, one of the tug's quarter bitts struck the SAUDI DIRIYAH's hull and opened a gash in the vessel's fuel oil tank. Oil began spilling into the river and continued to flow for the next two hours as the vessel moved upstream and docked.

Approximately 9,000 gallons of oil leaked into the river from the spill. The cleanup was directed by the United States Coast Guard, which designated NSCSA as the "responsible party" under the OPA. NSCSA thus arranged and paid for all of the cleanup. NSCSA paid roughly $870,000 to those engaged to remove the oil, and it also paid $106,806.12 to settle claims of those whose property was damaged by the spill. In addition, the Coast Guard and the United States Navy incurred about $300,000 in costs, which these agencies are seeking to recover from NSCSA.

NSCSA brought an action in the United States District Court for the Eastern District of Virginia, claiming that Moran's negligence was

the cause of the spill. NSCSA brought claims under OPA, the Virginia Water Control Law, and state common law. The Water Control Law claim was dismissed before trial. After a bench trial the district court found that Moran was negligent and that this negligence was the sole cause of the accident. The court therefore granted relief under OPA, but it determined that OPA § 1004(a)(2) capped Moran's damages at $500,000. The court also concluded that none of the exceptions to this cap applied and that NSCSA could not circumvent the cap through its state law claims. However, under general maritime law the court awarded NSCSA $3,250 for the lost fuel and $16,050 for the damage to the hull. The court also awarded prejudgment interest. See National Shipping Co. of Saudi Arabia (NSCSA) v. Moran Mid-Atlantic Corp., 924 F. Supp. 1436 (E.D. Va. 1996).

NSCSA appeals from the district court's denial of its claims for relief under state law and from the finding that none of the exceptions to OPA's damages cap applies. Moran appeals from the district court's conclusion that Moran's negligence caused the spill.

II.

We turn first to Moran's cross-appeal. Moran contends that the district court erred in holding it liable under OPA § 1002 for the cleanup of the oil spill. Section 1002(a) establishes that the "responsible party" will be liable for the removal costs and damages of a spill. See 33 U.S.C. § 2702(a). Under § 1001(32)(A) the responsible party is defined as the owner or operator of the vessel which actually discharges the oil. Since NSCSA is the "responsible party" with regard to the SAUDI DIRIYAH, NSCSA was liable for the cleanup. Under § 1002(d)(1), however, the responsible party can reassign liability to a third party if the responsible party "establishes that [the] discharge . . . and the resulting removal costs and damages were caused solely by an act or omission of one or more third parties." 33 U.S.C. § 2702(d)(1). The district court found that Lusk, who as captain of the tug was serving as Moran's agent, acted negligently during the maneuver; the court further found that this negligence was the sole cause of the accident. Therefore, the court concluded that Moran was liable for the costs of the cleanup under § 1002(d)(1). We review the district court's factual findings only for clear error. See Waters v. Gaston County, 57 F.3d 422, 425 (4th Cir. 1995).

4

Moran contends that the accident was caused not by its negligence but rather by the negligence of Morey, the docking pilot hired by NSCSA. According to Moran, Morey failed to alert Lusk that the SAUDI DIRIYAH was changing the direction of its turn, and this failure to alert misdirected Lusk, causing him to approach the SAUDI DIRIYAH at the wrong spot. The district court, however, found that Lusk had failed to exercise proper control over his vessel during the course of the maneuver. See NSCSA, 924 F. Supp. at 1452. Having reviewed the evidence and the district court's findings, we do not believe that the district court clearly erred in finding that Moran was negligent.

III.

We next examine NSCSA's contentions that the district court erred in limiting Moran's liability under OPA's damage cap. Section 1002(d)(2)(A) of OPA states that "[i]f the act or omission of a third party that causes an incident occurs in connection with a vessel or facility owned or operated by the third party, the liability of the third party shall be subject to the limits provided in section 2704 of the title as applied with respect to the vessel or facility." 33 U.S.C. § 2702(d)(2)(A). Section 1004(a)(2) puts the damages cap for any vessel other than a tank vessel at "$600 per gross ton or $500,000, whichever is greater." 33 U.S.C. § 2704(a)(2). Since the tugboat weighed only 252 gross tons, the district court limited Moran's liability under OPA to $500,000. See NSCSA, 924 F. Supp. at 1447. NSCSA attempts to get around this cap in two ways: it argues (a) that OPA's exceptions to the cap apply and (b) that it can recover the excess amount through state law claims under the Virginia Water Control Law and state common law. We take these arguments in turn.

A.

A party's liability may exceed the damages cap in OPA § 1004(a) if it falls into one of the exceptions in § 1004(c). The cap does not apply if the party committed "gross negligence or willful misconduct" or "violat[ed] . . . an applicable Federal Safety, construction, or operating regulation." 33 U.S.C. § 2704(c)(1). NSCSA contends that Moran, through its agent Lusk, violated one of the applicable federal

5

safety regulations, namely, the Inland Navigational Rule. That rule provides:

> Every vessel shall at all times maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision.

33 U.S.C. § 2005. On the night of the accident, Lusk was acting as his own lookout. NSCSA contends that the absence of an additional designated lookout violated § 2005. Whether a special lookout was necessary is a question of fact which we review for clear error. See C.G. Willis, Inc. v. The Spica, 6 F.3d 193, 196, 197-98 (4th Cir. 1993).

The district court made the following findings of fact in determining the lack of need for a separate lookout:

> On the night of December 1, 1993, the sky was clear and calm. . . . [Captain Lusk] testified that he had an almost complete view of his surroundings through the windows of his wheelhouse. The HARRIET MORAN was laying a short distance off the port quarter of M/V SAUDI DIRIYAH. Captain Lusk testified that he had the best possible view of the ship from the wheelhouse. It does not appear that a separate lookout would have been of much assistance to the Captain.

NSCSA, 924 F. Supp. at 1451. These findings of fact are not clearly erroneous.[1]

_____

[1] NSCSA argues that Lusk admitted the need for a lookout during his deposition. When asked "Did you have a lookout posted?", Lusk responded that "[t]he engineer at the time of the undocking would have been my lookout." J.A. 115. During his trial testimony, however, Lusk explained that the engineer "would have been[the lookout], if I inquired of him, requested him to be a lookout." J.A. 90. We do not interpret Lusk's deposition testimony as an admission of the need for a separate lookout.

6

B.

NSCSA also claims that it can avoid OPA's damages cap by bringing claims under the Virginia Water Control Act and state common law. The Water Control Act provides that "[a]ny person discharging or causing or permitting a discharge of oil into or upon state water . . . shall be liable to [a]ny person for injury or damage to person or property, real or personal, loss of income, loss of the means of producing income, or loss of the use of the damaged property for recreational, commercial, industrial, agricultural or other reasonable uses, cause by such discharge." Va. Code. Ann. § 62.1-44.34:18(C)(4). NSCSA claims that this section enables it to recover its response costs under OPA as property damage or economic losses. NSCSA also seeks to bring Virginia common law indemnity and subrogation claims in order to collect its OPA expenses. In essence, NSCSA wants to use state law to collect the costs that it incurred as the OPA "responsible party" in excess of the $500,000 liability cap.

We conclude, however, that OPA prevents NSCSA from using state law to collect damages under OPA that exceed OPA's liability cap. OPA § 1004(a) specifically provides:

> Except as otherwise provided in this section, the total of the liability of a responsible party under section 2702 of this title and any removal costs incurred by, or on behalf of, the responsible party, with respect to each incident shall not exceed [the limitations set forth therein].

33 U.S.C. § 2704(a) (emphasis added). NSCSA is liable for the costs of the spill solely under OPA § 1002, and Moran is liable for those costs solely under § 1002. Thus, the total of Moran's exposure under OPA cannot exceed $500,000.[2] The only exceptions to this cap are those set forth in § 1004 itself.

_____

NSCSA also contends that even if Lusk could have served as an adequate lookout on his own, he failed to do so on the night of the accident. However, NSCSA fails to present any evidence that would warrant such a conclusion.

[2] As we noted above, under § 1002(d)(2) Moran is treated as a "responsible party" for purpose of the liability cap.

7

NSCSA claims that OPA does not limit NSCSA's ability to collect its excess liability under OPA through state law claims. It cites OPA § 1018(a)(2), which states that "[n]othing in this chapter . . . shall . . . affect, or be construed or interpreted to affect or modify in any way the obligations or liabilities of any person under .. . State law, including common law." 33 U.S.C. § 2718(a)(2). NSCSA argues that this section allows it to bring state law claims to recoup its expenses. We disagree. NSCSA reads § 1018(a)(2) too broadly; that section only protects the rights of parties to bring additional claims based on liability that accrues under state law. If NSCSA had itself been damaged by the oil, or if it had been successfully sued by others under state law for damages relating to the spill, then the OPA liability restrictions would not apply.**3** And in this case, NSCSA was not precluded by OPA from bringing a general maritime claim for the loss of fuel and the damage to the SAUDI DIRIYAH's hull. As the district court pointed out, however, "[s]tate law was never imposed to force NSCSA to cleanup the spill or to compensate its victims." NSCSA, 924 F. Supp. at 1449. Instead, "NSCSA's liability derived exclusively from OPA." Id.

If a responsible party could recoup its OPA liability costs through state law claims as well as through OPA, the cap imposed by OPA

_____

**3** The district court provided an example of such a case:

> Consider, for example, a case where an oil spill causes one million dollars of damage, but the responsible party's liability under OPA is limited to $500,000. If the spill occurred in Virginia, the responsible party may have to pay for the full cost of the spill despite the liability limitation contained in OPA because a person's liability under Virginia's State Water Control Law may be higher than its liability under OPA. . . . If the spill was caused by the negligence of a third party, as it was in this case, it is reasonable to assume that the responsible party may: (1) sue the third party for contribution under section 2709 of OPA; and (2) be subrogated to the rights of the state and of other claimants under the State Water Control Law. In this way, the responsible party, whose ultimate liability was not restrained by OPA, could recover the full cost of the spill from the third party despite any liability limitation the third party might enjoy under OPA.

NSCSA, 924 F. Supp. at 1449.

8

§ 1004(a) would be rendered meaningless. Congress clearly intended for the cap to apply in situations like this one, since it established that "the liability of the third party shall be subject to the limits provided in section 2704 of the title." 33 U.S.C. § 2702(d)(2)(A). Under OPA's limitations on liability, smaller vessels are subject to lesser liability. Even if we disagreed with this policy judgement, we are constrained by the text of the statute.

Because NSCSA seeks to recover costs imposed solely because of its liability under OPA, "the total of the liability [imposed on Moran] under section 2702 of this title and any removal costs incurred by, or on behalf of, the responsible party, with respect to each incident shall not exceed" OPA limits -- for Moran, $500,000. **4**

IV.

Based on the foregoing reasons, we affirm the judgment of the district court.

<u>AFFIRMED</u>
_____
**4** Because we affirm the limitation of Moran's OPA liabilities to $500,000, we need not discuss NSCSA's argument that the district court should have included the expenses incurred by Turnaboat Services Ltd. as part of NSCSA's expenses under OPA.

9