**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-2366**

LATRICE ALSTON WOODARD,

              Plaintiff - Appellant,

        v.

THE COUNTY OF WILSON; WILSON COUNTY DEPARTMENT OF SOCIAL
SERVICES,

              Defendants - Appellees.

Appeal from the United States District Court for the Eastern
District of North Carolina, at Raleigh.  James C. Dever III,
District Judge. (5:07-cv-00006-D)

Argued:  March 24, 2010              Decided:  August 31, 2010

Before MICHAEL and DAVIS, Circuit Judges, and Eugene E. SILER,
Jr., Senior Circuit Judge of the United States Court of Appeals
for the Sixth Circuit, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Angela Newell Gray, GRAY NEWELL, Greensboro, North
Carolina, for Appellant.  Mary Craven Adams, WOMBLE, CARLYLE,
SANDRIDGE & RICE, PLLC, Winston-Salem, North Carolina, for
Appellees. **ON BRIEF:** James R. Morgan, Jr., WOMBLE, CARLYLE,
SANDRIDGE & RICE, PLLC, Winston-Salem, North Carolina, for
Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Latrice Alston Woodard, a social worker with the Wilson County Department of Social Services (WCDSS), was dismissed from her employment under WCDSS's anti-nepotism policy after she married the son of a WCDSS day porter. Woodard sued WCDSS and the County of Wilson, North Carolina, alleging violation of her constitutional right to marry and various state tort claims. After discovery, defendants successfully moved for summary judgment in the district court. Finding this case indistinguishable from Waters v. Gaston County, 57 F.3d 422 (4th Cir. 1995), where we upheld a similar anti-nepotism policy under rational basis review, we affirm the district court's grant of summary judgment for defendants.

I.

WCDSS is a governmental division of the County of Wilson, North Carolina. WCDSS maintains an anti-nepotism policy, entitled "Statement of Relatives' Employment." The policy prohibits "[t]wo members of an immediate family" from being "employed within the same department/agency." J.A. 196. It defines "immediate family" to include a mother-in-law and daughter-in-law. The WCDSS policy is authorized by the North Carolina Administrative Code, 25 NCAC 01I.1701-1702, which is in

2

turn authorized by North Carolina statute, N.C.G.S. § 126-1, et seq.

The anti-nepotism policy has been consistently enforced at WCDSS over a number of years. It was created in 1985, and James Glenn Osborne, Jr., the current director of WCDSS, kept the policy in place when he became director in 1994. Director Osborne maintained the policy because he believed it was in the best interest of the citizens of Wilson County. He thought it prevented violations of confidentiality, prevented the public appearance of unfair hiring and promotion practices, avoided domestic disputes in the workplace, and limited potential conflicts of interest. Of the other two known incidents of WCDSS employees violating the policy, one of the two employees voluntarily resigned to ensure compliance. There is no instance where two employees violated the policy and thereafter both were allowed to remain at WCDSS.

Plaintiff Woodard began working for WCDSS in August 2001 as a Child Protective Services Social Worker. Prior to being hired, Woodard was made aware of the anti-nepotism policy and acknowledged the Statement of Relatives' Employment with her signature. Judy Vaughn, Woodard's current mother-in-law, has worked as a day porter at WCDSS since August 15, 1994. Neither woman supervised the other, although Vaughn was in charge of

cleaning Woodard's office, and the two would occasionally cross paths at work.

Woodard met Vaughn's son at a restaurant in Wilson County, and the two started to date in March 2003. They became engaged on May 1, 2005. After a series of meetings with supervisors, human resource employees, and Director Osborne, Woodard was informed that no exception to the anti-nepotism policy would be made. Director Osborne gave Woodard an opportunity to resign and offered to make a favorable recommendation for employment with nearby counties.

Woodard married Vaughn's son on July 15, 2006. This made Woodard a daughter-in-law to Vaughn and Vaughn a mother-in-law to Woodard, thus causing both to violate WCDSS's anti-nepotism policy. After confirming that Woodard had married Vaughn's son and would not resign, Director Osborne dismissed Woodard from WCDSS on July 25, 2006. On August 3, 2006, Director Osborne memorialized the decision in a letter to Woodard, explaining that Woodard was dismissed, rather than Vaughn, because Woodard initiated the action that caused both her and Vaughn to violate WCDSS's anti-nepotism policy.

On December 5, 2006, Woodard filed a complaint against WCDSS and the County of Wilson in the General Court of Justice, Superior Court Division, for the County of Wilson, North Carolina. The complaint asserts state and federal

4

constitutional violations and state tort claims for wrongful termination, negligent infliction of emotional distress, and intentional infliction of emotional distress. Defendants removed the action to the Eastern District of North Carolina on January 5, 2007. The district court granted defendants' summary judgment motion on November 13, 2008, and Woodard now appeals.

## II.

"We review the district court's grant of summary judgment de novo, viewing all facts and inferences in the light most favorable" to Woodard. Food Lion, Inc. v. S.L. Nusbaum Ins. Agency, Inc., 202 F.3d 223, 227 (4th Cir. 2000). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Woodard argues that WCDSS's anti-nepotism policy violates her fundamental right to marry under the Fourteenth Amendment to the United States Constitution and Article I, Section 19 of the North Carolina Constitution. The North Carolina Supreme Court interprets these two constitutional provisions conterminously. See Tri-County Paving, Inc. v. Ashe County, 281 F.3d 430, 435 n.6 (4th Cir. 2002). The alleged constitutional violations undergird Woodard's state tort claims

5

for wrongful termination, negligent infliction of emotional distress, and intentional infliction of emotional distress.

"It is well-settled law that the Constitution embraces a fundamental right to marry" and that this right is "recognized as a basic tenet of substantive due process." Waters v. Gaston County, 57 F.3d 422, 425 (4th Cir. 1995). However, "not every restriction on the right to marry violate[s] the Constitution; rather, 'reasonable regulations that do not significantly interfere with decisions to enter into the marital relationship may legitimately be imposed.'" Id. (quoting Zablocki v. Redhail, 434 U.S. 374, 386 (1978)). Therefore, strict scrutiny applies "only to regulations that 'significantly interfere' with the right to marry." Id. (quoting Zablocki, 434 U.S. at 388). If the anti-nepotism policy does not significantly interfere with the right to marry, then we will "facially review [it] to determine whether there was a rational basis for its passage." Id. at 426.

In Waters we held that the anti-nepotism policy for Gaston County, North Carolina, did not significantly interfere with the right to marry. Id. Gaston County's policy did not allow spouses to be employed in the same department. In the event two employees within the same department married, each was given 90 days to obtain a transfer to another department. If a transfer was not available, the policy described neutral methods

6

for determining which employee would be terminated. Id. at 424 n.1. We found that this anti-nepotism policy "may [have] touch[ed] upon the marriage relationship" but did "not directly and substantially interfere with that right by preventing those who wish[ed] to marry from doing so." Id. at 426 (quotations omitted). "At most," we explained, "it [wa]s an unwelcome hurdle, forcing one spouse to attempt to transfer to another department within the County or to leave the County's employ altogether." Id.

Waters stands for the general proposition that anti-nepotism policies do not significantly interfere with the right to marry and should be reviewed under the rational basis standard. In an attempt to distinguish Waters, Woodard argues that strict scrutiny should apply to WCDSS's anti-nepotism policy because WCDSS restricts not only married partners from working together but also immediate family members. Although the WCDSS policy covers more family members than the policy in Waters, the reasoning in Waters does not depend on the number of people affected by the policy. Like the policy in Waters, the WCDSS policy does "not directly and substantially interfere with [the] right [to marry] by preventing those who wish to marry from doing so." Id. (quotations omitted). Indeed, Woodard was able to marry Vaughn's son. "At most," the WCDSS policy "is an unwelcome hurdle, forcing" Woodard to attempt to find a position

7

outside WCDSS "or to leave the County's employ altogether." Id. This hurdle does not restrict marriage; instead, it "is a work-related restriction with incidental effects on [Woodard's] marriage." Id.

The remaining differences between the policy here and that in Waters are not material to Woodard's claim. Woodard points out that the WCDSS anti-nepotism policy, unlike that in Waters, does not explicitly provide an opportunity to apply for a transfer, nor does it contain a neutral process to determine which employee will be terminated. These differences are, at most, relevant to whether the procedure for firing Woodard was constitutionally sufficient and do not touch on the substantive right to marry. Because Woodard has not pursued a claim of inadequate process, we need not consider these differences further.

Finding Waters indistinguishable, we hold that the WCDSS anti-nepotism policy "does not significantly interfere with the fundamental right of marriage." Id. Thus, "we facially review [it] to determine whether there was a rational basis for its passage." Id. Director Osborne explained that he retained the policy because it "serves a number of proactive, preventive measures." J.A. 191. Among those articulated by Director Osborne are "rational and laudable workplace goals" that we approved of in Waters, such as "reducing favoritism or

8

even the appearance of favoritism" and "preventing family conflicts from affecting the workplace." 57 F.3d at 426 (quotations omitted). The WCDSS anti-nepotism policy therefore survives rational basis review.[*] Woodard's state law tort claims likewise fail for the same reason.

## III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

[*] Woodard argues that the WCDSS anti-nepotism policy is not narrowly drawn because it is more restrictive than the County of Wilson anti-nepotism policy. As discussed, the WCDSS policy is not reviewed with strict scrutiny. The WCDSS policy is authorized by North Carolina law, and WCDSS may choose an anti-nepotism policy that is more restrictive than the County of Wilson policy so long as it has a rational basis.